COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and White
Argued at Richmond, Virginia

UNPUBLISHED

TIMOTHY COLE, JR.

MEMORANDUM OPINION* BY
v.       Record No. 1204-21-2              CHIEF JUDGE MARLA GRAFF DECKER
SEPTEMBER 27, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
W. Allan Sharrett, Judge

James T. Maloney (James T. Maloney, PC, on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Timothy Cole, Jr., appeals his conviction for possession of a firearm by a felon, in

violation of Code § 18.2-308.2. The appellant argues that the trial court erred by admitting

evidence of additional firearms. For the following reasons, we affirm the conviction.

I. BACKGROUND[1]

On September 30, 2020, the appellant went to the home of Gail Solomon. Solomon was

out of town, but her granddaughter, Z.S.,[2] was staying at the house with a friend. Z.S. and her

friend had the appellant and two of his friends over as guests. The appellant had a small "black

and gray" gun with him when he came to the house. At some point during the evening, the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Under the applicable standard of review, this Court considers the evidence in the light
most favorable to the Commonwealth, as the prevailing party below. *See Johnson v.
Commonwealth*, 70 Va. App. 45, 46 (2019); *Mercer v. Commonwealth*, 66 Va. App. 139, 145-46
(2016).

[2] Solomon's granddaughter was seventeen years old when she testified at trial.

appellant and Z.S. went into her grandmother's bedroom, where Solomon kept her gun and her jewelry in a safe. They both left the room, but Z.S. later found the appellant in the bedroom putting her grandmother's "gun case into his backpack." She told him to return it, but the appellant refused.

The next day, Solomon returned home. That day, she discovered that her gun and jewelry had been removed from the safe in her bedroom closet.[3] Solomon also realized that her second, smaller safe also was missing from her closet. Two days after this discovery, a friend of the appellant returned the gun to Solomon. Later that same day, the appellant spoke with Solomon on the telephone. He apologized for stealing her firearm and requested that she "drop the charges." Solomon asked for the other stolen items to be returned. At first, the appellant claimed that he did not have them and that he had thrown the stolen safe, with the jewelry inside, in the trash. The following night, however, the appellant returned to Solomon's house and brought the small safe back with him. When he was there, he opened his backpack, and Solomon saw a sawed-off shotgun inside it.

During the ensuing investigation, the appellant admitted to Sergeant Kyle Nichols of the City of Hopewell Police Department that he took Solomon's firearm but claimed that he did so unwittingly. The appellant told Nichols that Z.S. put it in his backpack without his knowledge.

The Commonwealth charged the appellant with possession of a firearm by a felon, in violation of Code § 18.2-308.2. During the prosecutor's opening statement at trial, he mentioned that the appellant brought a firearm with him to Solomon's house when he first went and again when he returned, that time with a sawed-off shotgun in his backpack. After both parties completed opening statements and the first witness testified, the appellant asked to speak outside

---

[3] At trial, Solomon testified that she kept the safe locked. She said that her granddaughter knew the safe's combination, but Z.S. testified that she did not.

of the presence of the jury. The appellant objected to the admission of testimony about any guns other than the one stolen from Solomon because he had received no information about either of them before trial. The trial court overruled the objection. During the Commonwealth's case, Z.S. testified that the appellant was armed with a gun when he came to the house with his friends. Solomon's testimony included her account of seeing a sawed-off shotgun in the appellant's backpack when he returned the safe.

The jury convicted the appellant of possession of a firearm by a felon. The trial court sentenced him to five years in prison in accordance with the jury's recommendation.

## II. ANALYSIS

The appellant challenges the admission of testimony that he had a firearm with him when he first went to the house and that he later had a shotgun in his backpack when he returned to the home. He does so by alleging several different legal errors relating to the admission of that evidence.

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." *Johnson v. Commonwealth*, 70 Va. App. 45, 49 (2019) (quoting *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013)). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). A reviewing appellate court can conclude that "an abuse of discretion has occurred" only when "reasonable jurists could not differ" about the correct result. *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "[B]y definition," however, a

trial court "abuses its discretion when it makes an error of law." *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017) (quoting *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014)).

With these legal principles in mind, we turn to the appellant's assignments of error.

### A. *Due Process: Notice*

The appellant contends that the admission of evidence of the firearm that he initially brought to the house and the sawed-off shotgun in the backpack deprived him of his due process right to be apprised before trial of the basis of the charge against him. To support this argument, the appellant cites cases related to bills of particulars and defective indictments.[4]

"Both the United States and Virginia Constitutions recognize that a criminal defendant enjoys the right to be advised of the cause and nature of the accusation lodged against him." *Simpson v. Commonwealth*, 221 Va. 109, 114 & n.3 (1980) (first citing U.S. Const. amend. VI; then citing Va. Const. art. I, § 8); *see also* U.S. Const. amend. XIV. An indictment fulfills that mandate by "giv[ing] an accused notice of the nature and character of the charged offense so the accused can make his defense." *Commonwealth v. Dalton*, 259 Va. 249, 253 (2000). The Supreme Court of Virginia has held that an indictment "fully honor[s]" these "important" constitutional values by complying with Code §§ 19.2-220 and -221, statutes that govern the content and form of indictments. *Simpson*, 221 Va. at 114. Code § 19.2-220 "requires that an indictment name the accused, describe the offense charged, identify the location of the alleged commission [of the crime], and designate a date for the offense." *Id.* In addition, the statute makes clear that the indictment is required only to state "so much of the common law or

---

[4] The appellant also argues on brief that the due process notice violation is demonstrated by the fact that if the Commonwealth had elected to pursue multiple charges for various weapons, he could not have been tried simultaneously for those offenses under Rule 3A:6(b). This argument is procedurally barred on appeal because the appellant did not raise it below. *See* Rule 5A:18; *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (explaining that for an objection to preserve an issue for appeal, it must be both timely and specific).

statutory definition of the offense as is sufficient to advise what offense is charged." *Id.* at 115 (quoting Code § 19.2-220). "[T]he Commonwealth is not required to disclose the evidence upon which it planned to rely to prove an element of the offense." *Paduano v. Commonwealth*, 64 Va. App. 173, 179 (2014).

Here, the indictment sets forth the charge against the appellant and follows the language of Code § 18.2-308.2. It also alleges that the crime occurred in Hopewell on or about October 1, 2020. Therefore, the indictment "name[d] the accused, describe[d] the offense charged, and identif[ied] the location" and a date of the alleged crime in compliance with Code § 19.2-220. *See Simpson*, 221 Va. at 114. The indictment was sufficient to adequately apprise the appellant of "the nature and character" of the charge against him. *See Dalton*, 259 Va. at 253. The appellant did not ask for a bill of particulars. On this record, the Commonwealth was not required to give him notice of Z.S.'s statement that he initially brought a firearm with him or of Solomon's statement that she saw a sawed-off shotgun in his backpack. Consequently, the admission of the challenged testimony did not deprive the appellant of his due process right to be apprised before trial of the basis of the charge against him, which was sufficiently set forth in the indictment.

### B. Due Process: Brady v. Maryland

The appellant argues that under *Brady v. Maryland*, 373 U.S. 83 (1963), the Commonwealth should have disclosed before trial both Z.S.'s statement that he brought a firearm to the house when he went to see Z.S. and Solomon's statement that she saw a sawed-off shotgun in his backpack when he returned.

"Under *Brady*, 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Mercer v. Commonwealth*, 66

Va. App. 139, 146 (2016) (quoting *Brady*, 373 U.S. at 87). "There are three components of a violation of the rule of disclosure first enunciated in *Brady* . . . ." *Workman v. Commonwealth*, 272 Va. 633, 644 (2006). First, "[t]he evidence not disclosed to the accused 'must be favorable to the accused, either because it is exculpatory[]' or because it may be used for impeachment." *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Second, the Commonwealth must have withheld the evidence, without regard to whether it did so "willfully or inadvertently." *Id.* Third, the evidence must be "material" under *Brady*, meaning "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Commonwealth v. Tuma*, 285 Va. 629, 634-35 (2013) (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)); *see also Workman*, 272 Va. at 644-45 (describing the third prong as whether the accused was prejudiced). "The accused has the burden of establishing each of these three components to prevail on a *Brady* claim." *Mercer*, 66 Va. App. at 146 (quoting *Tuma*, 285 Va. at 635).

The appellant characterizes the granddaughter's testimony that he brought a gun with him when he first came to the house and Solomon's testimony that she saw a sawed-off shotgun in his backpack as prior inconsistent statements. He believes that they are inconsistent because neither witness provided that evidence during her testimony in general district court or her police interview, suggesting that the statements could have served as impeachment of those witnesses.

Assuming without deciding that the challenged testimony was impeachment evidence, it was disclosed to the appellant during trial. "*Brady* is not violated, as a matter of law, when impeachment evidence is made '"available to [a] defendant[ ] during trial"' if the defendant has 'sufficient time to make use of [it] at trial.'" *Tuma*, 285 Va. at 635 (alterations in original) (quoting *Read v. Va. State Bar*, 233 Va. 560, 564 (1987)). Since the evidence was made

- 6 -

available during trial, the only remaining question is whether the appellant had "sufficient time to make use of [it]." *Id.* (alteration in original) (quoting *Read*, 233 Va. at 564).

Upon learning of the challenged evidence during the prosecutor's opening statement, the appellant's trial counsel did not request a continuance or even a recess in order to consider whether to alter the appellant's trial strategy based on the information. Instead, counsel used the information to cross-examine the witnesses.

After Z.S. testified that the appellant brought a firearm with him when he first came to the house, defense counsel cross-examined her about why she had not disclosed that fact during the preliminary hearing. Z.S. responded simply that she had not been asked.

During Solomon's testimony, she stated that she saw a sawed-off shotgun in the appellant's backpack when he returned the small safe to her several days after he took it from her home. Defense counsel cross-examined Solomon as to why she did not mention the shotgun to Sergeant Nichols during her lengthy conversations with him. Solomon clarified that she did tell Nichols about it during their second conversation.

The appellant hypothesizes that in addition to impeachment purposes, the challenged evidence could have aided his defense in another way. He purports that had he known of this testimony before trial, he *might* have been able to identify witnesses to contradict Z.S. and Solomon on these points. However, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Johnson v. Commonwealth*, 53 Va. App. 79, 106 (2008) (quoting *United States v. Agurs,* 427 U.S. 97, 109-10 (1976)). Therefore, the appellant has not demonstrated materiality under *Brady*.

In sum, the appellant learned of the evidence at a time when he was able to use it for impeachment purposes, and he cross-examined the witnesses on the respective points. In

addition, insofar as he suggests that the evidence was relevant to his defense for a purpose other than impeachment, he did not demonstrate that the evidence was material within the meaning of *Brady*. Consequently, no *Brady* violation occurred. *See Tuma*, 285 Va. at 635-37.

### C. Due Process: Inconsistent Verdicts

The appellant claims that the trial court violated his due process rights by allowing the Commonwealth to introduce evidence of "a separate and uncharged offense for which the [j]ury could have reached inconsistent verdicts." He argues that it was error because some of the jurors may have convicted him based on evidence of Solomon's stolen gun and others may have based the conviction on the firearm that Z.S. saw him with when he first came to the house or the sawed-off shotgun later seen by Solomon.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." To meet the requirements of the contemporaneous objection rule, an objection must be both timely and *specific*. *See Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019). There are two reasons for this requirement. *See Bethea v. Commonwealth*, 297 Va. 730, 744 (2019). First, such an objection "gives the opposing party the opportunity to meet the objection *at that stage of the proceeding.*" *Id.* (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) (emphasis added)). Second, a timely and specific objection "afford[s] the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010); *see Bethea*, 297 Va. at 743-44.

In the trial court, the appellant objected on the grounds that the admission of the evidence was prejudicial, a surprise to the defense, and a *Brady* violation. He also objected based on due process and lack of notice, asking the trial court to require the Commonwealth to specify the

weapon on which the charge was based. In addition, the appellant argued that the evidence would confuse the jurors because they might "believe that they [could] convict him based on that firearm." However, when the trial court responded that the jury could base the conviction on any firearm, as long as the evidence supported the decision, defense counsel cited only lack of notice and *Brady* to support the objection. The appellant at no time argued that admitting the evidence would violate due process by allowing the jury to convict him through an inconsistent verdict or without unanimously determining that he had possessed the same firearm.

Although the objections the appellant made below were related, they did not raise the questions of inconsistent verdicts or jury unanimity. Neither the prosecutor nor the judge had the opportunity to consider these legal questions encompassed in this assignment of error. The judge's response and comments throughout demonstrate this point. Therefore, review of this assignment of error is precluded by Rule 5A:18.[5] *See Hicks*, 71 Va. App. at 268-69 (procedurally barring the jury unanimity issue under 5A:18); *Gheorghiu v. Commonwealth*, 54 Va. App. 645, 675 (2009) (holding that the defendant did not adequately raise his jury unanimity argument at trial even though he objected on the related ground of duplicity), *aff'd in part, rev'd in part on other grounds*, 280 Va. 678 (2010).

### D. Rules of Evidence

The appellant contends that the admission of other crimes evidence violated Virginia Rule of Evidence 2:404(b). He also argues that the admission of the testimony violated Rules of

---

[5] The appellant does not ask the Court to apply the good cause or ends of justice exception to Rule 5A:18, and we will not raise either exception *sua sponte*. *See Jones v. Commonwealth*, 71 Va. App. 597, 607 (2020); *Jiddou v. Commonwealth*, 71 Va. App. 353, 368 n.8 (2019); *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*), *aff'd*, No. 040019 (Va. Oct. 15, 2004) (unpublished order), *cited with approval in Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017).

Evidence 2:402 and 2:403 because the challenged evidence was irrelevant, the "danger of unfair prejudice" outweighed its probative value, and it was likely confusing or misleading to the jury.

The appellant did not raise these arguments below. There were no challenges based on the rules of evidence. At trial, the appellant objected that the evidence was "prejudicial" and a "surprise." The trial court asked counsel to specify the rule that the evidence violated. Defense counsel responded that the testimony was exculpatory "because it ha[d] never been mentioned" and was inconsistent with the witnesses' prior statements. Counsel clarified that it was "a *Brady* violation." At no time did trial counsel challenge the evidence as "other crimes evidence" or reference Rules of Evidence 2:402 to 2:404. Based on the challenges raised, the court concluded that the testimony was not inconsistent. Defense counsel pivoted, arguing that the evidence was "confusing for the jury, because [she did not] want the jury to believe that they c[ould] convict him based on" a firearm other than the one stolen from Solomon. The trial court noted that the Commonwealth was "not required to specify" without a bill of particulars requiring the Commonwealth to disclose "which firearm" it was "relying on." The court again instructed defense counsel, "[I]f you believe that they violated a rule, cite to it." Counsel responded by reiterating that it was "a *Brady* violation."

After making an argument on *Brady*, counsel also objected on "due process grounds" because the court did not require the Commonwealth to specify the firearm on which it was proceeding. She argued that the appellant was "entitled to notice." The court asked her to "cite the authority for [her] position," and she responded simply, the "Constitution." The court overruled the objection.

The record demonstrates that the appellant was given ample opportunity below to explain the basis for his objection to the admissibility of the evidence. Despite this opportunity, he did not make a challenge under Rule of Evidence 2:404(b) to the testimony as evidence of other

crimes. Similarly, he did not argue that the evidence was inadmissible under Rules of Evidence 2:402 and 2:403 because it was irrelevant, unfairly prejudicial, and likely confusing or misleading to the jury.

Although the appellant contended at trial that the testimony was "prejudicial," he did so only generally and in the context of his *Brady* objection. *See generally Workman*, 272 Va. at 644-45 (describing the third prong of the *Brady* analysis as whether the accused was prejudiced). In addition, of course, most relevant evidence will be prejudicial. *See Commonwealth v. Proffitt*, 292 Va. 626, 635 (2016). The appellant did not suggest that the testimony was *unfairly* prejudicial or connect it to a specific objection. Nor did he suggest it was irrelevant or violated a rule of evidence. Also, the appellant argued that the evidence was confusing to the jury, but he did so in the context of his argument that he had not received adequate notice that the basis of the charge against him might be a firearm other than the one stolen from Solomon. When the trial court asked defense counsel to specify the rule violated, counsel responded only that it was a "*Brady* violation" and also objected on due process grounds due to lack of notice. It would simply not be a fair reading of the discussion at trial to construe the appellant's use of the word "prejudicial" and phrase "confusing for the jury" out of context and interpret his arguments as setting forth challenges under the evidentiary rules.

For these reasons, we conclude that the appellant did not adequately raise his challenges under the rules of evidence at trial in order to preserve them for appeal. *See Bethea*, 297 Va. at 743-44. Therefore, Rule 5A:18 bars our consideration of these particular assignments of error on the merits.[6]

---

[6] Again, the appellant does not ask this Court to apply the exceptions to Rule 5A:18, and we do not will so *sua sponte*. *See Jiddou*, 71 Va. App. at 368 n.8.

### III. CONCLUSION

The notice that the appellant received of the charge against him satisfied due process. In addition, the nondisclosure of the challenged testimony before trial did not violate the appellant's rights pursuant to *Brady*. Finally, he did not adequately preserve the issues of inconsistent verdicts or admissibility under the Virginia evidentiary rules. For these reasons, we affirm the conviction.

*Affirmed.*